UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


| | |
|---|---|
| BRENDA A. ESHELMAN, )<br>)<br>      *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** [1] )<br>)<br>      *Defendant* ) | *Docket No. 06-107-B-W* |

*REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the issue whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from severe degenerative disk disease, degenerative joint disease of the knees, obesity, headaches, thyroid and bladder problems and depression, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted currently serving Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on July 3, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

administrative law judge found, in relevant part, that the medical evidence established the presence of severe, medically determinable impairments, including degenerative disk disease of the lumbosacral spine, degenerative joint disease and obesity, Finding 3, Record at 18; that the plaintiff's allegations regarding her pain and other limitations were not supported by the medical evidence and were not credible to the extent of establishing an inability to perform sedentary work, Finding 5, *id.*; that, despite her severe impairments, she was able to perform sedentary work inasmuch as she could sit at least six hours, stand/walk at least two hours and lift/carry at least ten pounds occasionally in an eight-hour workday, Finding 6, *id.*; that she retained the residual functional capacity ("RFC") to perform significant numbers of unskilled sedentary jobs existing in the national economy, as demonstrated by application of Rules 201.27 and 201.28, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), Finding 8, *id.*; and that she therefore had not been under a disability at any time through the date of decision, Finding 9, *id.*[3] The Appeals Council declined to review the decision, *id.* at 6-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her

---

[3] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through December 31, 2005, *see*
*(continued on next page)*

past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff delineates three points of error, all of which challenge the substantiality of the evidence undergirding the administrative law judge's RFC finding – namely, that the administrative law judge (i) reached an incomplete RFC determination by ignoring two impairments (migraine headaches and urinary incontinence) and ignoring or wrongly rejecting limitations on sitting, walking and/or standing found by Steven J. Tosi, M.A., A.T.C., and adopted by treating physician Kenneth Fowler, M.D., (ii) employed an improper legal standard, requiring the plaintiff at Step 5 to disprove that she possessed a sedentary RFC rather than citing positive evidence in support of such an RFC finding, and (iii) impermissibly directly assessed the raw medical evidence to arrive at an RFC determination.  *See generally* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 10).  I agree that, primarily on the basis of the plaintiff's second and third points of error, reversal and remand are warranted.

## I. Discussion

The plaintiff's winning points of error implicate several bedrock Social Security principles: that (i) at Step 5, the record must contain positive evidence in support of the commissioner's findings regarding a claimant's RFC, *see, e.g., Rosado*, 807 F.2d at 294, (ii) unless the sequelae of a claimant's impairments are obvious to a layperson as a matter of common sense, an administrative law judge is not qualified to determine RFC on the basis of the raw medical evidence but instead must look to a medical expert to do so, *see, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327,

---

Finding 1, Record at 18, shortly before the decision date of April 13, 2006, *see id*. at 19.

329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record"), and (iii) the Grid generally cannot permissibly be used as a vehicle to meet the commissioner's Step 5 burden – vocational-expert testimony ordinarily must be sought instead – if a claimant's nonexertional impairments significantly affect his or her ability "to perform the full range of jobs" at the appropriate exertional level, *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted).

The Record in this case contained three RFC assessments – two from Disability Determination Services ("DDS") personnel or consultants deeming the plaintiff capable of performing at least light work, *see* Record at 158-65, 232-39, and one from Tosi, incorporated by reference in Dr. Fowler's RFC report, deeming the plaintiff capable of performing less than a sedentary level of work, *see id.* at 249-54.[4] The administrative law judge expressly declined to adopt the Tosi/Fowler assessment. *See id*. at 17. While purporting to give the DDS assessments some unspecified amount of weight, *see id.* at 16, he essentially rejected them by finding the plaintiff capable only of sedentary work. In so doing, he effectively scrapped all three RFC assessments of record and determined the plaintiff's RFC on his

---

[4] The first DDS reviewer, whose name is illegible, noted no restrictions in the plaintiff's work capacity. *See* Record at 158-65. The second, Lawrence P. Johnson, M.D., found her limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking with normal breaks for a total of about six hours in an eight-hour workday and sitting with normal breaks for a total of about six hours in an eight-hour workday. *See id.* at 233. He found no limitations on her ability to push and/or pull, including operation of hand and/or foot controls. *See id*. These findings are consistent with the demands of light work. *See* Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings (1983-1991) ("SSR 83-10"), at 29 (light work entails "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"; a job also is in the light-work category "when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls"). Tosi deemed the plaintiff capable of tolerating only a six-hour workday and of sitting for five to six hours, standing for one to two hours and walking for two to three hours. *See* Record at 249. This represents less than a sedentary work capacity. *See* SSR 83-10 at 29 (sedentary work entails, *inter alia*, standing or walking for no more than about two hours in an eight-hour workday and sitting for approximately six hours in an eight-hour workday).

4

own – something a layperson is not permitted to do, at least not in a case such as this that involves an array of complex disabilities alleged to impose a range of exertional and nonexertional impairments.

At oral argument, counsel for the commissioner acknowledged that the administrative law judge did not rely on the DDS reviewers but contended that an administrative law judge is permitted, pursuant to First Circuit caselaw, to craft an RFC by picking and choosing from the medical evidence of record. While the First Circuit does permit an administrative law judge to pick and choose among physicians' findings and opinions, *see, e.g., Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks – the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case – is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter. Though it is sometimes useful to have such testimony presented, we decline to lay down an ironclad rule that, without it, a judge is powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians."), it does not permit the crafting of an RFC based on the raw medical evidence of record unless "common-sense judgments about functional capacity" can be made, *see, e.g., Gordils*, 921 F.2d at 329 (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record").[5]

---

[5] As the plaintiff observes, *see* Statement of Errors at 4-5, rather than relying on positive evidence that she could perform the full range of sedentary work, the administrative law judge erroneously deemed her capable of that level of exertional capacity because she had not proven otherwise, *see* Record at 17-18. At oral argument, counsel for the commissioner contended that it is the plaintiff's burden at Step 4 to establish RFC, a proposition for which she cited *Vazquez v. Secretary of Health & Human Servs.*, 683 F.2d 1, 2 (1st Cir. 1982). However, *Vazquez* speaks in terms of the claimant's burden at Step 4 to show "a disability serious enough to prevent him from working at his former jobs" – not to establish his or her RFC. *Vazquez*, 683 F.2d at 2. Moreover, in *Rosado*, in which the First Circuit found a lack of substantial evidence in a Step 5 case that the claimant retained the RFC to perform sedentary work, the First Circuit observed: "Since it is the Secretary's burden at step 5 of the sequential evaluation process to show that there are jobs in the economy that claimant can perform, the Secretary cannot rely on a presumption of sitting ability sufficient to do sedentary work." *Rosado*, 807 F.2d at 294 (citations omitted).

This error might nonetheless have been forgiven as harmless if the two DDS RFC assessments, which found the plaintiff to possess even greater functional capacities than had the administrative law judge, could be said to constitute "substantial evidence" of her RFC. But that is not the case. Inasmuch as appears, the first of the two DDS assessments, dated December 2, 2003, was completed by a layperson "Single Decision Maker." *See id*. at 20, 165. Thus, any reliance upon it was (and is) misplaced. While the second DDS assessment, dated March 26, 2004, was completed by a physician (Dr. Johnson), *see id*. at 239, he did not have the benefit of the Tosi/Fowler RFC assessment, which constituted material new evidence postdating his own RFC report, *see id*. at 240-54. In such circumstances, a non-examining consultant's opinion cannot stand as substantial evidence of RFC. *See Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

That the administrative law judge required the assistance of a medical expert (whether Dr. Johnson or someone else) in assessing the impact of the new materials is apparent in his treatment of them. Tosi conducted a detailed functional assessment that he described as a "[v]alid representation of [the plaintiff's] present physical capabilities based upon consistencies and inconsistencies when interfacing grip dynamometer graphing, resistance dynamometer graphing, pulse variations, weights achieved, and selectivity of pain reports and pain behaviors." *Id*. at 240 (emphasis omitted). The administrative law judge rejected it on the basis that nothing in Tosi's assessment explained his opinion that the plaintiff was restricted to a six-hour workday, "and it appears likely that it was based on the claimant's many subjective complaints of pain during that evaluation." *Id*. at 17. An

6

administrative law judge is free to decline to adopt an RFC opinion of a treating source such as Dr. Fowler but must supply "good reasons" for doing so. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion").[6] The administrative law judge was not qualified, as a layperson, to reject the Tosi/Fowler opinion on the basis that it appeared to be predicated on the plaintiff's subjective complaints when Tosi had indicated his opinion was buttressed as well by various objective indicators, such as graphing and pulse variations.[7]

Inasmuch as the Record contains no substantial evidence that the plaintiff was capable of performing essentially the full range of work existing at even the lowest exertional level – sedentary work – the administrative law judge erred in relying on the Grid to prove her capable of making an adjustment to work existing in significant numbers in the national economy. Reversal and remand accordingly is warranted.[8]

---

[6] At oral argument, counsel for the commissioner argued that the Tosi opinion should not be evaluated as a treating-source opinion because it was largely based on the plaintiff's subjective complaints. Alternatively, she contended, to the extent Dr. Fowler did adopt the Tosi report, Dr. Fowler lacked sufficient longitudinal history with the plaintiff to assess her RFC, having seen her on only three occasions over a three-year period. The Tosi report was deserving of treating-source status, Dr. Fowler having expressly adopted it. *See* Record at 251-54. That the administrative law judge viewed the report as based on the plaintiff's subjective complaints does not make it any less a treating-source report. While the nature of a treating source's relationship with a claimant, including frequency of visits, is relevant to analysis of the weight to be accorded the treating source's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), the administrative law judge did not cite this as a factor in rejecting the Tosi/Fowler opinion, *see* Record at 17-18.

[7] While Tosi did not specifically explicate the basis for his opinion that the plaintiff was limited to a six-hour workday, he made clear enough that his entire opinion was predicated on the factors listed in his cover letter. *See* Record at 240, 249-50.

[8] The plaintiff also complains that the administrative law judge failed to factor in her claimed headache and urinary-incontinence symptoms in assessing her RFC or analyze her obesity in accordance with Social Security Ruling 02-1p ("SSR 02-1p"). *See* Statement of Errors at 2 & n.3. I discern no error in the administrative law judge's implicit determination that the plaintiff's headaches and urinary incontinence were non-severe impairments. There is little objective medical evidence concerning the headaches, and the Record indicates that the plaintiff's urinary incontinence responded well to treatment, *see, e.g.*, Record at 182, 287. Nonetheless, the commissioner is reminded, on remand, to factor in the effects, if any, of even non-severe impairments in calculating RFC. *See, e.g.*, 20 C.F.R. §§ 404.1545(e), 416.945(e) ("When you have a severe impairment(s), . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). While the administrative law judge did not expressly cite SSR 02-1p, his treatment of the plaintiff's obesity comported with that ruling. He determined that the plaintiff's severe impairment of obesity, in combination with her other severe impairments of lumbosacral degenerative disk disease and degenerative joint disease, imposed certain specified restrictions on her functioning. *See* Record at 17-18. The plaintiff's argument notwithstanding, *see* Statement of Errors at 2 n.3, SSR 02-1p did not oblige him to quantify exactly which portion of her restrictions was attributable to obesity versus her other impairments, *see* SSR 02-1p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2006), at 257 n.5 ("The combined effects of obesity with other impairments may be greater than might be
*(continued on next page)*

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of July, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.").